J. S20004/15

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| RONALD BRAKE, | : | No. 1975 WDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, September 19, 2013,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0003887-2012

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND WECHT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:               **FILED MAY 11, 2015**

Ronald Brake appeals from the judgment of sentence of September 19, 2013, following his conviction of multiple counts of theft.  On appeal, he challenges the amount of restitution he was ordered to pay.  Finding no error, we affirm.

On August 20, 2013, appellant entered a guilty plea to counts two through seventeen of the information in exchange for a probationary sentence.  Count one, dealing in the proceeds of illegal activity, was withdrawn.  Appellant pled guilty to one count of retail theft as a third-degree felony; one count of theft by unlawful taking as a third-degree felony; and fourteen counts of theft by deception, one count graded as a third-degree felony, one count graded as a first-degree misdemeanor, five counts graded as second-degree misdemeanors, and seven counts graded as

third-degree misdemeanors. The charges related to appellant's theft of $10,400 in scratch-off lottery tickets while employed at the Glassmere Food Mart in Springdale. Appellant cashed the stolen lottery tickets at various other stores in the area, mostly in Cheswick and New Kensington. Sentencing was deferred pending a restitution hearing.

On September 19, 2013, the parties appeared for a restitution hearing and sentencing. It was determined that appellant owed restitution of $20,106, allocated as follows: $9,400 to American General Insurance, Glassmere's insurer; $1,000 to Glassmere for its insurance deductible; and $9,706 to the Pennsylvania Lottery Commission for the proceeds of the stolen tickets. Appellant was sentenced to seven years of probation at count two, theft by unlawful taking as a felony of the third degree, with no further penalty at the remaining counts. In addition, the court allowed for the possibility that appellant's probation could be reduced if he paid off the restitution sooner. (Notes of testimony, 9/19/13 at 39.)

Appellant filed a petition for reconsideration and modification of sentence which was denied on October 8, 2013. On November 12, 2013, appellant filed a PCRA[1] petition seeking restoration of his direct appeal rights. The petition was granted on November 15, 2013, and on December 13, 2013, appellant filed a notice of appeal. Appellant complied

---

[1] Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed a Rule 1925(a) opinion.

Appellant has raised the following issues for this court's review:

I. Whether the aggregate amount of restitution of $20,106.00 is illegal because it is excessive, speculative, and not supported by the record?

II. Whether the restitution award of $9,706.00 to the Lottery is illegal because the amount is excessive and speculative, was based entirely on hearsay, and no evidence was introduced that the Lottery suffered any loss?

Appellant's brief at 5.

"We first note that questions implicating the trial court's power to impose restitution concern the legality of the sentence." ***Commonwealth v. Hall***, 80 A.3d 1204, 1211 (Pa. 2013), citing ***In re M.W.***, 725 A.2d 729, 731 n.4 (Pa. 1999).

Initially, we note that

> [i]n the context of criminal proceedings, an order of restitution is not simply an award of damages, but, rather, a sentence. An appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. The determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary.

*Commonwealth v. Kinnan*, 71 A.3d 983, 986 (Pa.Super. 2013), quoting

*Commonwealth v. Stradley*, 50 A.3d 769, 771-772 (Pa.Super. 2012)

(citations and quotation marks omitted).

Here, the parties agree that restitution was imposed as a condition of appellant's probation, rather than as part of his sentence. (Appellant's brief at 21 n.6; Commonwealth's brief at 10.) As such, Section 9754 of the Judicial Code governs.

Section 9754 provides, in pertinent part, as follows:

**(a)** **General Rule.--**In imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, which term may not exceed the maximum term for which the defendant could be confined, and the authority that shall conduct the supervision.

**(b)** **Conditions generally.--**The court shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life.

**(c)** **Specific conditions.--**The court may as a condition of its order require the defendant:

. . . .

(8) To make restitution of the fruits of his crime or to make reparations, in an amount he can afford to pay, for the loss or damage caused thereby.

. . . .

    (13) To satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience.

***Hall***, 80 A.3d at 1212, quoting 42 Pa.C.S.A. § 9754.

> In the context of a criminal case, restitution may be imposed either as a direct sentence, 18 Pa.C.S. § 1106(a), or as a condition of probation, 42 Pa.C.S. § 9754. When imposed as a sentence, the injury to property or person for which restitution is ordered must directly result from the crime. However, when restitution is ordered as a condition of probation, the sentencing court is accorded the latitude to fashion probationary conditions designed to rehabilitate the defendant and provide some measure of redress to the victim. . . . Thus, the requirement of a nexus between the damage and the offense is relaxed where restitution is ordered as a condition of probation.

> ***M.W.***, 725 A.2d at 732 (restitution provision of Juvenile Act corresponds to Section 9754 in that neither contains language specifically requiring that loss or injury sustained by victim be direct result of defendant's actions; court has broad measure of discretion to fashion remedy based on nature of crime and earning capacity of perpetrator).

***Id.*** at 1215.

> Thus, a condition requiring the defendant to take some measure of financial responsibility for the

consequences of his criminal conduct may be reasonably related to the rehabilitation that probation is designed to foster. Probation itself is a form of lenity in the context of criminal sentencing, and so long as essential constitutional liberties and freedoms are not disturbed, sentencing judges have discretion to fashion monetary obligations as conditions under Section 9754(c)(8) and (13). Such conditions, so long as they are individualized and reasonable, may provide some measure of redress to those who have suffered financial hardship due to a defendant's crimes, while guiding the defendant towards a law-abiding path.

*Id.* at 1216 (footnote omitted).

This more liberal standard for ordering restitution is consistent with the rehabilitative purposes of probation. Thus, even without direct causation, a court may properly impose restitution as a probationary condition if the court is satisfied that the restitution is designed to rehabilitate the defendant and to make some measure of reimbursement to the victim. Such sentences afford courts latitude to order restitution so that offenders will understand the egregiousness of their conduct, be deterred from re-offending, and be encouraged to live responsibly. They also give sentencing courts flexibility to determine all direct and indirect damages caused by an offender.

*Commonwealth v. Harriott*, 919 A.2d 234, 238 (Pa.Super. 2007), *appeal denied*, 934 A.2d 72 (Pa. 2007) (citations omitted). "However, there must be at least an indirect connection between the criminal activity and the loss. Additionally, to the extent a sentence of probation is imposed to make restitution for losses caused by the defendant's criminal conduct, there should be proof of the damages suffered." *Kinnan*, 71 A.3d at 987 (quotation marks and citations omitted).

In his first issue on appeal, appellant argues that the aggregate amount of restitution of $20,106 is excessive and speculative. According to appellant, the Commonwealth failed to establish the restitution awards to American General and the Lottery with competent facts. Appellant argues that there is no evidence as to how many lottery tickets were actually stolen. (Appellant's brief at 28.) Appellant states that the Commonwealth did not call any witnesses from American General or the Lottery to testify as to their respective losses. (*Id.*)

First, we note that appellant pled guilty and stipulated to the facts. (Notes of testimony, 8/20/13 at 2.) In addition, the Commonwealth called witnesses from Glassmere to testify at appellant's restitution hearing. Greg Hetrick ("Hetrick"), retail operations manager for Glassmere Food Stores, testified as to the process of receiving and settling packs of lottery tickets from the Lottery Commission. Hetrick testified that the stores receive packs of scratch-off tickets from the Lottery via UPS. (Notes of testimony, 9/19/13 at 8.) The individual packs come in amounts of $300 and $600. (*Id.*) The packs are then activated for sale to the consumer. (*Id.*) Hetrick testified that after a pack of lottery tickets is sold, it is "settled" with the Lottery: "After a pack is sold, we settle the pack, and once we settle the pack of tickets sold, we pay the lottery for that, and then get our commission from the Lottery Commission." (*Id.*) Hetrick testified that the Lottery generates computer reports through the settlement system,

and the stores also keep track of tickets by hand. (*Id.* at 12-13.) Hetrick

testified that there were $10,400 in tickets that were not settled:

> I looked at the reports, and when you don't sell a pack, we have another report through the Lottery Commission and it tells us that these packs were never settled by a manager. So that's when you start looking for why they weren't settled, and that's how they found that the packs were missing and not settled, so we were short hundreds of dollars.
>
> BY MS. PAGE:
>
> Q      What was the total amount of packs that were not settled?
>
> A      It was $10,400.

*Id.* at 9-10.

Beth Geer ("Geer"), manager of the Springdale store where appellant

worked, also testified regarding the activation and settling of lottery tickets:

> These slips here are the activation slips that come with every pack of tickets. Before we can sell them, you have to scan it so they are activated so the lottery knows if anybody should turn them in so they can collect money if they won on that ticket.
>
> Q      Where do those slips go?
>
> A      After we activate them, we have a folder that we stick them in, and that's where we keep them until they are settled. We kept them always. We didn't get rid of any of them, ever.
>
> Q      Attached to the slip, that activation slip, what is that documentation?
>
> A      This was a report that the lottery sent of each ticket, the time. It tells you the time that it

was activated, and the date, and then it tells you every ticket that was cashed in and the time and the date, and where it was cashed in at, the location, whether it was our store or whatever store.

Q    Now the time and date -- you prepared these documents, correct?

A    Yes.  I prepared most of them.  Me and Mike Naviglia, Chief of Police of Springdale.

Q    You have the activation slip and you have the printout from the PA Lottery Commission, correct?

A    Correct.

Q    The dates and times of when those packs were activated, who was working in the store on those dates and times?

A    Ron Brake.

Q    You also stated that on the big piece of paper, the eight and-a-half by 11 paper, it also shows you dates and times of when the individual tickets were cashed in, correct?

A    Correct.

MS. PAGE:  At this time I would move for the admission of Commonwealth Exhibit 2.

MR. KELLER:  I have no objection.

THE COURT:  It's admitted.

MS. PAGE:  Your Honor, at this time it's been stipulated by the Commonwealth and defense counsel that the total number of tickets cashed in totals $9,706.

THE COURT:  Okay.

*Id.* at 16-18.

Furthermore, the Commonwealth introduced into evidence a Sworn Statement of Proof of Loss from the insurance company, American General, as well as a copy of the check received from American General in the amount of $9,400. (*Id.* at 6-8; Commonwealth's Exhibit 1.) Hetrick testified that the original claim was for $10,400; however, Glassmere had a $1,000 deductible, so the check was for $9,400. (*Id.* at 6-7.)

The record supports the court's calculation of the restitution owed by appellant, and was neither speculative nor excessive. Although appellant argues that the Commonwealth did not call any witnesses from the Lottery or American General, Hetrick testified that the insurance company paid $9,400 as a result of Glassmere's loss. Commonwealth's Exhibit 1, which included a copy of the check and a Sworn Statement of Proof of Loss, was admitted without objection. In addition, Hetrick explained that $10,400 in lottery tickets were activated but not sold. Furthermore, it was stipulated that the amount cashed in for these tickets and paid by the Lottery was $9,706. The total amount of restitution of $20,106 was amply supported by the record. This claim fails.

Next, appellant argues that the restitution award of $9,706 to the Lottery is illegal. According to appellant, there is no evidence that the Lottery actually suffered any loss. (Appellant's brief at 30.) Appellant contends that because the lottery tickets he cashed were, in fact, valid,

winning tickets, the Lottery did not lose anything. (***Id.*** at 33.) Appellant argued at the restitution hearing that ultimately, the Lottery would have paid the winning tickets anyway:

> There is no evidence of a loss to these convenience stores that Mr. Brake was going around and cashing in these tickets at. They were going to give that money out regardless of whether the tickets were stolen or if they were paid for. My client wasn't accused of manipulating tickets, he wasn't accused of creating tickets. These were tickets that they were going to pay out.

Notes of testimony, 9/19/13 at 28.

> Like I said earlier, in our plea we pled to the theft by deception, retail theft, it was that conduct of cashing them in around town, but as far as restitution it's not there. Once he had ahold of that ticket, it's a negotiable instrument to be cashed in for the amount. That ticket, that stealing of the ticket, that is the theft, that is where the restitution lies. It doesn't lie when he receives an amount, especially considering if the PA Lottery is out that money, they are not here to say that. They are not here to substantiate that. I think to say so would be speculation. We don't have any evidence of that. It was a negotiable instrument. He gives it to a clerk. The clerk either pays him out if it's a winner or he doesn't.

***Id.*** at 30-31.

Appellant's argument misses the mark. First, it was stipulated that appellant cashed in $9,706 in stolen lottery tickets. (***Id.*** at 18.) That figure is not in dispute. Second, appellant has benefited from his wrongdoing and it is absurd to suggest that he should be allowed to keep his ill-gotten winnings because the Lottery would probably have paid out the money

regardless. These may have been "valid, winning tickets," as appellant states, but they were also stolen tickets. As the Commonwealth observes, while the Lottery might have paid out those winnings to somebody else, they would not have paid them to appellant because he had no right to those tickets. (Commonwealth's brief at 25.) To hold otherwise would provide appellant with a financial windfall. In fact, the amount of appellant's profit ($9,706) is roughly equal to the face value of the tickets ($10,400). (**Id.** at 25 n.4.) Therefore, appellant would be able to use his "winnings" to pay off the restitution for the tickets he stole. Certainly, this would not further Section 9754's primary purpose of rehabilitation of the offender.

Appellant relies on the recent case of **Kinnan**, **supra**, which is readily distinguishable. There, this court vacated the appellant's sentence and remanded for re-sentencing where we found the restitution component imposed as a condition of his probation to be illegal. In **Kinnan**, the appellant was an employee of a welding company and stole $3,010.41 worth of metal. **Id.** at 985. Police recovered the stolen metal from the appellant's garage and returned all of it to the welding company. **Id.** There was nothing in the record to indicate that the metal or the company premises were damaged in any way. **Id.**

As a condition of his probation, the trial court ordered the appellant to pay $3,010.41 in restitution to the company. **Id.** at 986. On appeal, this court determined that even as a probationary condition, the order could not

stand where the company suffered no permanent loss as a result of the theft. *Id.* at 987-988. The stolen property was returned to the victim and there was no indication of any other losses or damages. *Id.* at 987. The victim was only temporarily deprived of its property. *Id.*

In the case *sub judice*, it is undisputed that the Lottery paid out $9,706 for the stolen scratch-off lottery tickets and appellant does not claim that this money has been repaid. The stolen property in *Kinnan* was promptly returned and the victim was made whole. Here, the Lottery has been wrongfully and permanently deprived of $9,706 due to appellant's criminal conduct. It is true that, assuming all of the tickets were eventually cashed in, the Lottery would have paid out $9,706 to whoever had bought those tickets. Again, however, this misses the point. Appellant should not be permitted to benefit from his criminal activity and to hold otherwise would lead to an absurd and unconscionable result. Appellant's sentence was not illegal and the trial court's restitution calculation was supported by the record.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>5/11/2015</u>