2022 PA Super 48

| | | |
|---|---|---|
| ROBERT A. SICHELSTIEL, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VICTORIA L. SICHELSTIEL | : | No. 1804 EDA 2020 |

Appeal from the Order Entered July 27, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2003-05445

BEFORE:   KUNSELMAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

DISSENTING OPINION BY NICHOLS, J.:         **FILED MARCH 17, 2022**

I respectfully dissent because I disagree with the Majority and agree with the trial court that Father did not present sufficient evidence at the hearing to establish a lack of control over the decision to retain or distribute earnings concerning flow-through income from his various business ventures. I also disagree with the Majority that the trial court made improper credibility determinations.

Father challenges the child support obligation he was ordered to pay to Mother, arguing that the "flow-through" income which he received from various business ventures was retained by the businesses and should not have counted towards his net income because, as a minority owner of the businesses, he had no control over the decision to retain or distribute earnings.  I agree with the Majority that the trial court and all parties agreed

_____

[*] Former Justice specially assigned to the Superior Court.

that **Fennell v. Fennell**, 753 A.2d 866 (Pa. Super. 2000) applies but disagreed on the manner in which it should apply. Father argues that the hearing officer did not make explicit credibility determinations and that the trial court only inferred that the officer had made an adverse credibility finding because of the ruling in Mother's favor. The Majority agrees with Father's position and would reverse that portion of the trial court's order.

When evaluating a support order, this Court may only reverse where the order could not be sustained on any valid ground, absent an abuse of discretion. **Silver v. Pinskey**, 981 A.2d 284, 291 (Pa. Super. 2009) (*en banc*) (citation omitted). The "credibility to be assigned the parties' testimony and supporting exhibits lies initially with the hearing officer and the trial court." **Sirio v. Sirio**, 951 A.2d 1188, 1195 (Pa. Super. 2008) (citation omitted). The guidelines provide that child support must be based on the monthly net income from all sources over at least a six month-average. **Commonwealth v. Hall**, 80 A.3d 1204, 1216 (Pa. 2013); Pa.R.C.P. 1910.16-2. Income includes income derived from business and distributive shares of partnership gross income. 23 Pa.C.S. § 4302.

In **Fennell**, the mother sought child support from the father, who was a minority shareholder of a Subchapter S corporation. **Fennell**, 753 A.2d at 867. The net effect is that the S corporation could avoid tax at the corporate level by requiring its shareholders to pay tax on corporate earnings; thus, the earnings were not distributed to Fennell, but retained by the majority shareholders and reinvested in the company. **Id.** Although Fennell had to

report the income on his personal tax return, he did not receive the profit in cash for his personal use. *Id.* Nevertheless, the trial court found that Fennell's share of the corporate earnings was subject to child support calculations.

On appeal, this Court reversed, observing that "all benefits flowing from corporate ownership must be considered in determining income available to calculate a support obligation." *Id.* at 868 (citations omitted). "[T]he owner of a closely-held corporation cannot avoid a support obligation by sheltering income that should be available for support by manipulating salary, perquisites, corporate expenditures, and/or corporate distribution amounts." *Id.* "By the same token, however, we cannot attribute as income funds not actually available to or received by the party." *Id.*

This Court concluded that because Fennell did not receive the distributions and did not have the ability to control the company's issuance of its distributions nor the retention of its earnings, the corporate earnings should not be considered income. *Id.* This did not create a presumption that the earnings were *per se* to be excluded from income. *Id.* Such earnings were to be considered for support only where the individual could control the retention or disbursement of the funds, and only in those circumstances will he bear the burden of proving that the actions were necessary to maintain or preserve the business. *Id.*

Judge Del Sole dissented, agreeing that in appropriate cases, retained earnings may not be considered income for support, but that it is the burden

of the party seeking the income exclusion to convince the court. *Id.* at 869. Specifically, he noted that the trial judge had appropriately concluded that Fennell did not offer evidence or exhibits to provide the court with information from the Subchapter S return or the K-1 schedule. *Id.*

My interpretation of *Fennell* and its dissent is that the majority concluded it was not creating a *per se* rule that flow-through earnings were to be excluded from income, but that only where the individual could "control the retention or disbursement of the funds by the corporation," will he "bear the burden of proving that such actions were necessary to maintain or preserve the business." *Fennell*, 753 A.2d at 868 (formatting altered). Thus, the burden remains on the party appealing the support order to show that the earnings should be excluded from income. In *Fennell*, Judge Del Sole concluded that Fennell had not met his burden; similarly, I conclude that Father did not meet his burden in the instant case.

The Majority notes that the hearing officer's report did not contain factual or credibility findings; there was no other testimonial evidence suggesting that the hearing officer had concerns with Father's testimony or evidence; and the testimony was not contested by Mother. Maj. Op. at 11. The Majority goes on to observe that "[t]here was no inquiry at all into Father's ability to control whether his various businesses issued distributions, or whether it was the businesses' standing practice to retain earnings." *Id.* at 11-12. The Majority concludes that Father corroborated his testimony with documentation, containing "K-1 Schedules showing Father's ownership share

of the business, the flowthrough income for each business, and whether that business issued a distribution." *Id.* at 12.

However, I agree with the trial court that Father did not corroborate his testimony with the appropriate documentation. At the time of the proceeding before the hearing officer, Father was unable to provide the K-1 schedules as evidence.[1] The hearing officer expressed concern that Father's tax return did not include the total for distributions of K-1 income and did not specifically indicate the distributions were only made to reimburse income taxes on the distributions. Trial Ct. Op. at 3; N.T. at 25-26. Father provided a letter from his accountant explaining that the distributions were to reimburse Father for the income taxes on taxable income received but not distributed, the trial court and hearing officer did not find that information useful because it was not apparent on the actual tax return. Trial Ct. Op. at 3-4; N.T. at 25-26; Ex. D-5. Finally, the trial court averred that the schedules were not submitted as of the time of its decision. Trial Ct. Op. at 3 n.11. Although the K-1's were submitted as Exhibit B to Father's brief along with his exceptions, the court noted that the "attachments did not indicate" how the income was only being distributed for the purposes of paying taxes. Trial Ct. Op. at 6.

---

[1] At the hearing before the hearing officer, there was some discussion that the K-1's would be submitted following the hearing as Exhibit D-6, but in its opinion, the trial court averred that "upon review, it does not appear that Father's K-1's were ever supplemented to the record." Trial Ct. Op., 3/30/21, at 3 n.11; N.T., 11/29/19, at 23.

The trial court reviewed Father's attachments to his exceptions—the K-1 documentation—and determined that it did not indicate how the income was distributed solely for the purposes of paying taxes, and specifically, that it did not address the degree of Father's control over distributions. The trial court also found that the documentation did not confirm a longstanding practice of retaining earnings or whether distributions similar to the amount being diverted would be forthcoming to Father in the future. Order, 7/27/20, at ¶ 15 n.4.

Although the Majority finds that "nothing in the record indicates Father had control" over the corporate earnings, my interpretation of **Fennell** is that it was Father's burden to develop the record and to affirmatively show that he had no control over the earnings. **Fennell**, 753 A.2d at 869. On this record, Father did not meet his burden of proof before the hearing examiner nor the trial court, by failing to provide sufficient evidence and exhibits to show that the flow-through proceeds should be excluded from his income. Accordingly, I respectfully dissent, and would affirm the trial court's order.[2] **Id.**

---

[2] With respect to Father's second and third issues, to the extent that the Majority concludes that the hearing officer and trial court made improper credibility determinations, I disagree. **See**, **e.g.**, Maj. Op. at 11-12. Moreover, as discussed above, the underlying decision was not based on a credibility determination but upon Father's failure to present adequate evidence to show that he did not have control over the income distribution. Concerning Father's final issue, because I discern no error in the trial court's calculation and as there was no deviation, I would not reach this issue or speculate on a possible deviation.