J-A21018-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ROBERT TODD NOBLE | : | No. 828 EDA 2020 |

Appeal from the Order Entered January 24, 2020
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0001213-2019

BEFORE:  LAZARUS, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED NOVEMBER 10, 2020**

The Commonwealth of Pennsylvania appeals from the trial court's Order granting Robert Todd Noble's Motion to Suppress and Motion to Quash. After careful review, we reverse and remand for further proceedings.

Around 8:00 PM on January 7, 2019, Noble drove past Stockertown Borough police officer Gilbert Diaz, who was on routine traffic patrol. Officer Diaz noticed that one of Noble's two identification marker lights was out and, as a result, he could not read Noble's license plate. Officer Diaz effectuated a traffic stop, at which time Noble admitted that he did not possess a valid driver's license. Officer Diaz then determined that Noble had been convicted of Driving While Operating Privilege is Suspended or Revoked ("DUS") on three prior occasions.

Officer Diaz arrested Noble and the Commonwealth charged him with DUS under 75 Pa.C.S. § 1543(b)(1)(iii) and with violating 75 Pa.C.S. § 4303(d) pertaining to identification marker lights.

On August 2, 2019, Noble filed an Omnibus Pre-trial Motion that included a Motion to Suppress and a Motion to Quash. He averred that the court should suppress the evidence derived from his traffic stop because the Vehicle Code requires only one identification marker light to illuminate the license plate and, therefore, Officer Diaz lacked probable cause to effectuate a traffic stop. He also argued that the court should quash the Information because his prior DUS violations occurred before the legislature amended the DUS statute in 2018 and, therefore, those violations cannot support the charge imposed under Section 1543(b)(1)(iii).

On December 10, 2019, the court held a hearing on Noble's Omnibus Motion. Relevantly, Officer Diaz testified that Noble's vehicle was equipped with two identification marker lights. When Noble drove by Officer Diaz, Officer Diaz noticed that one of the identification marker lights was not functioning and stopped Noble's car. N.T. Hearing, 12/10/19, at 4-5.

On January 24, 2020, after a hearing and submission of briefs, the trial court granted Noble's Omnibus Motion in full, suppressing evidence derived from the traffic stop and quashing the Information. In support of its decision to suppress the evidence, the trial court cited 67 Pa.Code § 175.66(k), rather than the regulations that address "originally installed" identification marker lights. Trial Ct. Op., 1/24/20, at 3-6.

In granting Noble's Motion to Quash, the trial court observed that the legislature amended the DUS statute in 2018.[1] *Id.* at 6-7. The court analyzed the post-amendment statutory language to find that the legislature did not intend for pre-amendment DUS violations to count as prior DUS violations under the statute's increased penalty provisions. *Id.* at 8.

The Commonwealth timely filed a Notice of Appeal, including a Pa.R.A.P. 311(d) Affidavit of Appealability, and a Pa.R.A.P. 1925(b) Statement. The trial court filed a Rule 1925(a) Statement directing this Court to its January 24, 2020 Order and Opinion.

The Commonwealth presents two issues for our review:

1. Did the suppression court err in finding that there was not probable cause to stop Noble's vehicle?

2. Did the suppression court err in finding that Noble's multiple previous Driving Under Suspension violations did not qualify as prior offenses?

Commonwealth's Br. at 4. Noble did not file a brief.

In its first issue, the Commonwealth asserts that the trial court erred by granting Noble's suppression motion on the basis that Officer Diaz lacked probable cause to effectuate the traffic stop. *Id.* at 9-18.

In reviewing a Commonwealth appeal of a suppression order, we may consider only the evidence of the defendant's witnesses together with the uncontradicted evidence of the prosecution. ***Commonwealth v. Banks***, 165

_____

[1] **See** Act. No. 2018-153, S.B. No. 961 (effective December 23, 2018).

A.3d 976, 979 (Pa. Super. 2017). In the present case, Officer Diaz was the only witness to testify; his uncontradicted testimony, therefore, forms the factual basis of our review.

Where there is no meaningful dispute of fact, as in the case *sub judice*, our duty is to determine whether the trial court properly applied the law to the facts of the case. ***Id.*** We review the court's legal conclusions *de novo*. ***Commonwealth v. Brown***, 996 A.2d 473, 476 (Pa. 2010).

In concluding that Officer Diaz lacked probable cause to conduct a traffic stop, the trial court recognized that Section 4303(d) of the Vehicle Code requires conformance with the Department of Transportation ("DOT") regulations. Trial Ct. Op., at 4; 75 Pa.C.S. § 4303(d). The trial court, however, relied upon Section 175.66(k) of the DOT regulations, which requires that an identification marker light illuminate the registration plate with "white light . . . from [a] distance of 50 feet[.]" Trial Ct. Op., at 5; 67 Pa.Code § 175.66(k). The court concluded that Officer Diaz lacked probable cause because "there was no testimony indicating that [Noble's] license plate was not visible from a distance of fifty [] feet[.]" Trial Ct. Op., at 5.

Initially, we agree with the trial court that the Vehicle Code provides that every motor vehicle "shall be equipped with a system of lights which may include . . . identification . . . marker lights **in conformance with regulations of the [DOT]**." 75 Pa.C.S. § 4303(d). Stated another way, a person violates Section 4303(d) of the Vehicle Code when he violates a DOT regulation pertaining to his vehicle's lighting system. ***Id.***

The trial court, however, failed to acknowledge the DOT regulations that Noble actually violated. DOT regulations 175.66(a) and 175.80(a)(9)(i) provide that **all** originally-equipped or installed lights, including identification marker lights, must function properly. 67 Pa.Code §§ 175.66(a); 175.80(a)(9)(i).[2] In the instant case, Officer Diaz testified that Noble's vehicle was equipped with two identification marker lights and when Noble drove by Officer Diaz, only one identification marker light was functioning. N.T. Hearing, at 4-5. Since only one identification marker light was functioning, Noble was violating DOT regulations 67 Pa.Code §§ 175.66(a) and 175.80(a)(9)(i) and Officer Diaz had probable cause to stop Noble's car. Thus, the trial court erred in granting the Motion to Suppress.

In its second issue, the Commonwealth avers that the trial court erred by granting Noble's Motion to Quash. Commonwealth's Br. at 19-28. At issue is the proper interpretation of a portion of the DUS statute, 75 Pa.C.S. § 1543(b)(1)(i)-(iii). As this claim raises an issue of statutory construction, our standard of review is plenary. **Commonwealth v. Wilson**, 111 A.3d 747, 751 (Pa. Super. 2015).

---

[2] 67 Pa.Code § 175.66(a), titled "Condition of lamps and switches," provides that every lamp will be in safe operating condition as described in § 175.80. Section 175.80(a)(9)(i) requires that "[a]n exterior bulb or sealed beam, if originally equipped or installed" shall function properly. 67 Pa.Code § 175.80(a)(9)(i). **See, e.g., Commonwealth v. Muhammed**, 992 A.2d 897, 902 (Pa. Super. 2010) ("A center-mounted brake light is not required equipment under the [Vehicle Code] and regulations but, if it is originally equipped or installed, then it must operate properly and safely.").

We are guided by the Statutory Construction Act, which instructs that our primary concern is ascertaining and effectuating legislative intent. 1 Pa.C.S. § 1921(a). The plain language of a statute is generally the best indicator of legislative intent. **Commonwealth v. Hall**, 80 A.3d 1204, 1211 (Pa. 2013). We do not look beyond the plain language of an unambiguous statute. **Id.**

The portion of the DUS statute that is relevant to our analysis is divided into two provisions: one that identifies the type of prior violations that the trial court should consider ("Prior Violations Provision") and one that sets forth the different sentences that the trial court should impose based on the number of prior violations ("Sentencing Provisions").

In particular, the Prior Violations Provision identifies the particular offenses that the trial court must consider when determining the number of prior violations that a defendant has obtained:

> A person who drives a motor vehicle on a highway or trafficway of this Commonwealth at a time when the person's operating privilege is suspended or revoked as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) or the former section 3731, because of a violation of section 1547(b)(1) (relating to suspension for refusal) or 3802 or former section 3731 or is suspended under section 1581 (relating to Driver's License Compact) for an offense substantially similar to a violation of section 3802 or former section 3731 . . .

75 Pa.C.S. § 1543(b)(1)(i). We emphasize that the Prior Violation Provision does not include any limitation about the age of the prior violation.

The other relevant provisions are the Sentencing Provisions. Once the trial court determines the number of prior violations, the trial court reviews the Sentencing Provisions to determine the sentence to impose. The relevant Sentencing Provision in this case provides that if a defendant has three or more prior DUS violations, the trial court shall grade the offense as a misdemeanor of the third degree and sentence the defendant to pay a fine of $2500 and a period of incarceration for a period of time of not less than six months ("Three or More Prior Violations Provision"):

> (iii) A third or subsequent violation of this paragraph shall constitute a misdemeanor of the third degree and, upon conviction of this paragraph, a person shall be sentenced to pay a fine of $2,500 and to undergo imprisonment for not less than six months.

75 Pa.C.S. § 1543(b)(1)(iii).

In this case, it is undisputed that Noble already had three prior violations when he was arrested for this charge of DUS. Trial Ct. Op., at 2. As a result, Noble is subject to the Three or More Prior Violations Provision. Since the Commonwealth charged him pursuant to the Three or More Prior Violations Provision, 75 Pa.C.S. § 1543(b)(1)(iii), the Commonwealth properly charged Noble.

In granting the Motion to Quash, the trial court concluded that the Commonwealth did not properly charge Noble. The trial court arrives at this conclusion by re-drafting the Prior Violation Provision and adding an age limitation on the prior violations. In particular, the trial court defined "prior violations" only as those violations that a defendant obtained after 2018, when

the legislature amended the Prior Violations Provision. Trial Ct. Op., at 8-9. The trial court concluded that since Noble obtained the prior DUS violations before 2018, they were not relevant to determine Noble's "prior violations" and Noble was not subject to the Three or More Prior Violations Provision. ***Id.***

As an initial matter, we emphasize that Noble committed the instant DUS offense in 2019, after the legislature had amended 75 Pa.C.S. § 1543(b)(1). Thus, we review the statutory language of 75 Pa.C.S. § 1543(b)(1) in effect in 2019.

A review of the Prior Violation Provision demonstrates that the legislature did not impose a limitation on the age of prior violations. Rather, the legislature merely listed the offenses that constitute prior violations. Thus, the trial court lacked the authority to impose an age limitation on prior violations.

Additionally, there is no ambiguity in the language of the Prior Violation Provision that would necessitate interpretation of this provision in light of the legislature's amendments to it. The legislature chose not to impose an age limitation. The trial court, by comparing the 2018 version to the earlier version, created an ambiguity, which is contrary to our principles of statutory construction. The legislature clearly chose not to impose an age limitation on prior violations and, thus, the trial court erred in imposing one. We, therefore, reverse the trial court's decision to grant Noble's Motion to Quash.

Reversed and remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/10/2020