J-A03024-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RACHEL ANNE GURNEE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KHALEEL HASAN ABDEL WAHAB | : | No. 714 WDA 2023 |

Appeal from the Order Entered May 19, 2023
In the Court of Common Pleas of Erie County Domestic Relations at
No(s):  NS202300166 / CIV 45-2022

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: April 8, 2024**

Rachel Anne Gurnee (Mother), *pro se*, appeals from the order establishing the child support obligation of Khaleel Hasan Abdel Wahab (Father) regarding their 22-month-old daughter (the Child).  Mother challenges several aspects of the trial court's procedure and its calculation of the support award.  After careful review, we affirm.

The record discloses the following background.  The Child was born in July 2021.  Mother and Father married in August 2021 and separated in September 2021.  According to Mother, she originally filed for support in Venango County in December 2022, but the case was transferred to Erie County pursuant to the Intrastate Family Support Act (IFSA) in February 2023.  *See* 23 PA.C.S.A. §§ 8101-8415; *see also* Mother's Brief at 4.  The parties originally appeared before a conference officer, and Mother subsequently demanded a *de novo* hearing before the trial court.  Thereafter, the trial court

issued a support order adopting the conference officer's recommendation, which obligated Father to pay Mother $793.90 per month, retroactive to February 2023 – the date of the transfer to Erie County, not the purported date of Mother's initial filing.

To calculate Mother's monthly net income, the trial court considered Mother's actual, part-time earnings (16 hours per week), and assessed an earning capacity for an additional 24 hours per week.  The court utilized a local tax rate of 1.00%.  It also considered the fact that Mother would receive a child tax credit.  Mother timely filed this appeal and raises the following five issues:

1. Under Pa.R.C.P. 1910.11, can a trial court merely ratify a child support order that was based on the summary of an office conference, which is contested and not of-record, without referencing any deficiency in the contrary argument presented at the hearing *de novo*?

2. Did the trial court ignore the rule which specifies that the child support commences on the date of the claim, when the judge's order defers back to the trier-of-fact's summary, which specifies the contested commencement date is the date the support claim was transferred into Erie County?

3. Was the trial court's digression within the bounds when the argument concerning Mother's less-than-fulltime employment being not willful was not attended to at the hearing and then later denied in the court's opinion by virtue that the number of job search activities could not be recalled at the hearing?

4. Was the intent of the statute, which directs that child tax credit be managed to maximize the available funds for the child, satisfied when the

trier-of-fact added an unachievable amount to Mother's income?

5. Is it obvious that the trier-of-fact did not make a forthright attempt to perform in accordance with the Guidelines when, among other things, the local income tax for the City of Erie (1.65%) was ignored and the administration's online calculator default of the most common 1.00% was used?

*See* Mother's Brief at 2-3 (style adjusted).

We begin with our well-settled standard of review in matters concerning child support orders:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.
>
> In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***Sichelstiel v. Sichelstiel***, 272 A.3d 350, 534 (Pa. Super. 2022) (quoting ***Silver v. Pinskey***, 981 A.2d 284, 291 (Pa. Super. 2009) (*en banc*)) (further citations omitted).

In her first issue, Mother argues that the trial court's procedure was faulty. Specifically, she claims that she demanded a hearing *de novo*, pursuant to the Rules of Procedure, but that the trial court merely ratified the

conclusions from the support conference instead of reviewing the matter anew.

The Pennsylvania Rules of Civil Procedure establish two separate procedures for expediting support matters. Rule 1910.10 indicates that the action in support will proceed under the provisions of Rule 1910.11 unless the court, by local rule, adopts the alternative hearing procedures set for in Rule 1910.12. Erie County did not adopt these alternative procedures; its support cases are governed by Rule 1910.11. Under this Rule, a support matter proceeds by conference with a conference officer who then makes a recommendation of a support order. Either party may then demand a hearing before the court which shall be *de novo*. **See** Pa.R.C.P. 1910.11(i).

We have held that a "*de novo* hearing is a full consideration of the case anew." **See Warner v. Pollock** 644 A.2d 747, 750 (Pa. Super. 1994) (citation omitted). "The reviewing body is in effect substituted for the prior decision maker and redecides the case." **Id.** (quoting **Commonwealth v. Gussey**, 466 A.2d 219, 222 (Pa. Super. 1983)). "A *de novo* trial court review occurs when the court determines the merits of the legal question and issues its own findings of fact and conclusions of law." **See Raymond v. Raymond**, 279 A.3d 620, 626 (Pa. Super. 2022) (citing **City of Clairton v. Zoning Hearing Board of City of Clairton**, 246 A.3d 890, 906 (Pa. Cmwlth. Ct. 2021).

In its opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court explained its procedure:

Mother alleges that the court did not provide her with a hearing *de novo*. Ultimately, the court came to the same conclusion as the conference officer with regard to the amount for child support. This was, however, only after both parties were given a full and fair opportunity to present anew all evidence and testimony in support of their individual positions. Mother presented her testimony and admitted exhibits. The court ensured that Mother had a full opportunity to present her case by asking her after the presentation if she had anything else to present, to which Mother responded, "That will be all."

Similarly, at the apparent end of counsel's presentation of Father's case, the undersigned asked counsel if he had anything else for the court, at which point, Father responded with additional testimony.

Thereafter, the [court] advised the parties, "I will review all of the documentation that has been provided to me, as well as the testimony, and I will issue an order in the near future that both parties will receive." As the record reflects, the court received all evidence presented by parties and independently considered the same. The parties were given a full *de novo* hearing.

*See* Trial Court Opinion, 7/31/23, (T.C.O.) at 4 (citations to the record omitted).

After review, we conclude that the court's procedure was proper, that it afforded Mother a *de novo* review. Mother had an opportunity to present her case anew, and notwithstanding the court's reference to the alternative "exceptions" procedure, the court rendered its own findings of fact and conclusions of law. Mother's first appellate issue merits no relief.

In her second appellate issue, Mother argues the trial court erred when it determined that the child support award was retroactive to February 2023, instead of December 2022. Rule 1910.17(a) provides, in relevant part: "An

- 5 -

order of support shall be effective from the date of the filing of the complaint or petition for modification unless the order specifies otherwise." In her Brief, Mother maintains that she filed for support online, presumably through Department of Human Services' "PA Child Support Program," on December 26, 2022. According to her, the system gave Mother a request identification number, processed the claim, and transmitted it to Venango County. ***See*** Mother's Brief at 4. She says she was told by Venango County that the claim must be moved to Erie County, because the Father was not responding to mail. ***Id.*** "On February 22, 2023, Mother signed the form, IFSA, and the claim was forwarded to Erie County." ***Id.*** The transmittal was timestamped in Erie County on February 23, 2023.

When calculating Mother's support, the conference officer recommended the award be retroactive to February, not December. At the *de novo* hearing, Mother raised the retroactivity issue, but she did not provide much evidence or testimony supporting her position. The narrative set forth in her Brief (discussed above) is absent from the notes of testimony. To be sure, the record includes the IFSA transmittal form, which indicates that the case was transmitted from Venango County to Erie County. But the transmittal form does not state when the action was initiated. The record includes Mother's Uniform Support Petition, which includes an averment that the date of retroactivity should be December 26, 2022. In addition to this form, Mother provided a complaint for support which she said she filed in Venango. However, neither of these documents includes timestamps, docket numbers,

or any other information that would substantiate its timing. The trial court ultimately determined that Mother did not present sufficient evidence indicating that she actually filed for support in December 2022:

> This support action was instituted *via* a Uniform Support Petition signed by Mother on February 22, 2023 and time-stamped by the Erie County Section on February 23, 2023. Specifically, the Domestic Relations Section in Franklin [Township, Venango County, Pennsylvania] forwarded the Uniform Support Petition to Erie County *via* a Pennsylvania Child Support Enforcement Transmittal – IFSA. No record of any previous filing was included with the Transmittal.
>
> At the May 17, 2023 *de novo* hearing, Mother presented a Complaint for Child Support from the Court of Common Pleas of Venango County, which she indicates she filed on December 26, 2022. *See* Exhibit C. Nevertheless, the Complaint for Child Support presented has no timestamp, no docket number and no PACSES number and nothing appearing on the docket in Erie County documented the same. Assuming that the Complaint for Child Support presented by Mother at the *de novo* hearing was filed in Venango County, this court did not have any record evidence of what occurred subsequent to the filing resulting in this being initiated in Erie County *via* the Uniform Support Petition transmitted to Erie County. In sum, the record reflects only that the original filing date of the complaint is February 22, 2023, as commenced in the initiating tribunal of Venango County and forwarded to Erie County pursuant to the Intrastate Family Support Act. Absent record information that Mother requested child support prior to that date *via* a complaint that was not withdrawn or dismissed, there is not support in the law to make the order for support retroactive to a date preceding the filing of the Uniform Support Petition.

T.C.O. at 7-8.

Because sufficiency of the evidence is a question of law, the standard of review is *de novo*, and the scope of review is plenary. ***See, e.g.,***

*Commonwealth v. Coniker*, 290 A.3d 725, 734 (Pa. Super. 2023) (citations omitted). Without official markings, the trial court found Mother's documentation to be insufficient. Importantly, Mother did not testify as to the steps she undertook in December 2022, and thus the trial court had no record evidence of the date of filing. Indeed, our understanding of what transpired is gleaned from Mother's appellate brief, which is not record evidence.

For Mother's benefit, we clarify that the question is not whether she was being truthful, but only whether she provided sufficient evidence to the trial court to establish the date of retroactivity. Although we are willing to construe liberally materials filed by *pro se* litigants, they enjoy no special benefit. *Commonwealth v. Tchirkow*, 160 A.3d 798, 804 (Pa. Super. 2017). "Any layperson choosing to represent [themself] in a legal proceeding must, to some reasonable extent, assume the risk that [the] lack of expertise and legal training will prove [to be their] undoing." *Smithson v. Columbia Gas of PA/NiSource*, 264 A.3d 755, 760 (Pa. Super. 2021) (citations omitted). Here, the trial court determined that the evidence Mother produced at the hearing was not persuasive. We agree. Therefore, Mother's second appellate issue merits no relief.

The rest of Mother's appeal pertains to the calculation of her monthly net income. In her third appellate issue, Mother challenges the trial court's decision to impute upon her a fulltime earning capacity. In Pennsylvania, child support awards are calculated in accordance with specific statutory guidelines, using a complex system that considers the net income of both parties, and

accounts for the obligor's capacity to pay and the reasonable needs of the particular children. **See Commonwealth v. Hall**, 80 A.3d 1204, 1216 (Pa. 2013). The guidelines provide extremely detailed instructions for calculating child support awards based on both parties' net income from all sources. **Id**. at 1217; **see also** 23 Pa.C.S.A. § 4322(a). As a general rule, the amount of support to be awarded is based upon the parties' monthly net income over at least a six-month average. **See** Pa.R.C.P. 1910.16-2. The Domestic Relations Code defines the term "income" and includes income from any source. Pa.R.C.P. 1910.16-2(a); **see also** 23 Pa.C.S.A. § 4302.

However, when a party fails to obtain or maintain appropriate employment, the trier-of-fact may impute to the party an income equal to that party's earning capacity, in accordance with the procedure set forth in Pa.R.C.P. 1910.16-2(d)(4). The court shall determine a reasonable work regimen based upon the party's relevant circumstances, including the jobs available within a particular occupation, working hours and conditions, and whether a party has exerted substantial good faith efforts to find employment. Pa.R.C.P. 1910.16-2(d)(4)(i)(A)(ii). "When the trier-of-fact imputes an earning capacity to a party who would incur childcare expenses if the party were employed, the trier-of-fact shall consider reasonable childcare responsibilities and expenses." Pa.R.C.P. 1910.16-2(d)(4)(D). To determine the earning capacity, the court shall consider the enumerated factors listed in Pa.R.C.P. 1910.16-2(d)(ii)(A)-(N). These factors include, among others: childcare responsibilities and expenses; residence; employment and earnings

history; job skills; educational attainment; record of seeking work; and the local job market, including the availability of employers who are willing to hire the party.

In this case, Mother earns $10.00 per hour, working 16 hours per week. In addition to Mother's actual earnings, the court imposed an earning capacity for another 24 hours per week because it believed Mother had the ability to work fulltime – *i.e.*, 40 hours per week. For these 24 "earning capacity" hours, the court imposed an hourly wage of $8.00. In its Rule 1925(a) opinion, the trial court explained how it arrived at Mother's earning capacity:

> Mother's income was assessed based upon her 16 hours of [actual] employment with Dial America each week, plus an earning capability of $8.00/hour for 24 hours per week. While Mother's education is limited to high school graduation, she has maintained employment since high school. Specifically, in 2018, she worked at Valesky's grocery store. Thereafter, she worked as a nanny, making $12.00/hour. In 2019, she worked at Channellock, with her pay ranging from $7.00 to $12.00 per hour. She has also worked for AG World Support Systems. Since March 2021, Mother has worked in telecommunications for Dial America. Her employer permits her to work from home and she generally works 16 hours per week at an hourly rate of $10.00. Mother testified that she only works 16 hours per week because that is how much time [Maternal Grandmother] is able to provide her with childcare. Mother further testified that she is without transportation, residing in an "[unimproved] area of farmland in Venango County."
>
> Mother's income from her 16 hours of work each week does not equate to her earning capacity when considering her age, her employment history since high school, the variety of job skills in her employment history, and the lack of any criminal record or apparent health impediments to working. While the court is not unsympathetic to the challenges presented regarding childcare or the lack of having personal

- 10 -

transportation for employment, based upon the evidence presented, the court did not believe that childcare and transportation prevent Mother from attaining the very minimal level of income assessed. First, Mother was not credible regarding her record of seeking work. Although she testified that she continues to look for employment, she hesitated to respond when questioned regarding when she last looked for a job and the number of job applications that she has actually placed. When she ultimately responded by stating that she continues to look for employment, she qualified the responses with "employment that I would be able to do within my means." Similarly, she delayed in responding when questioned regarding the number of job applications she has placed in the last six months, ultimately stating "I don't remember." Moreover, Mother testified that she will not work more than 16 hours per week due to that being the amount of childcare that [Maternal Grandmother] is able to provide. There is no evidence to indicate why [Maternal Grandmother] is the only childcare option or that Mother has even sought alternative care or looked into the cost of the same. Mother's explanation that her lack of a personal vehicle is an additional impediment is similarly without support as a complete impediment to her employment. While Mother did not divulge the location of her residence, [FN1] she asserts that she is stranded in a remote area without transportation.

> [Footnote 1: The court does not minimize any apprehension Mother may have which is attributable to interactions with Father resulting in entry of a Protection From Abuse order. Mother was, however, [elusive] in areas of her testimony beyond just the location of her residence. For example, she hesitated to answer questions regarding whether she pays rent, when the last time was that she looked for a job, how many job applications she put out in the last six months, and how she received transportation to the *de novo* hearing.]

It is noteworthy, however, that she has maintained employment which allows her to work from home. In addition, she has a work history which includes serving as a nanny. Furthermore, she managed to find transportation to Erie for the *de novo* hearing. While there is no doubt that childcare and transportation issues can be challenging, "[t]he duty of child support, as every other duty

- 11 -

encompassed in the role of parenthood, is the equal responsibility of both [parents]" and "must be discharged by the parents even it causes them some hardship." ***D.H. v. R.H.***, 900 A.2d 922, 931 (Pa. Super. 2006) [(citations omitted)].

T.C.O. at 5-6 (citations to the record omitted).

On appeal, Mother argues that the trial court's computation was erroneous for several reasons. She claims the court failed to appreciate Mother's efforts to obtain gainful employment, and the precarious financial situation she was forced into when Father forced her to leave her home:

> Mother's been stranded in this rural area without transportation and must either walk miles or beg a ride just to get groceries. Mother only has the part-time job because the in-Erie employer has permitted her to continue this part-time job while working from home. There is no other work available to her. Mother has not been able to find other work which allows an initial start as a work from home. There's always been an initial requirement to work several months at the business site.

Mother's Brief at 8.

We understand Mother's arguments, but our standard of review means we cannot "re-find facts, re-weigh evidence, and re-assess credibility." ***D.R.L. v. K.L.C.***, 216 A.3d 276, 286 (Pa. Super. 2019). On these matters, we must defer to the trial court. Our role is to determine whether the trial court's decision was based on a misapplication of the law, or whether the decision was manifestly unreasonable or the product of partiality, prejudice, bias or ill will.

Upon conducting such a review, we discern no abuse of discretion. The trial court imposed an earning capacity to bring Mother up to a 40-hour workweek. The court set the earning-capacity wage at $8.00 per hour. In imposing this lesser wager, it appears the court did factor in Mother's limited access to childcare and transportation, at least to some extent. Although Mother had a history of earning more than $8.00 per hour, the court did not set her earning capacity to her highest wage ($12.00) or even her current wage ($10.00). Instead, the court implicitly recognized the limitations Mother currently faced. The trial court has the discretion to weigh these factors. Given the scant evidence of record, we cannot say that the court's decision was manifestly unreasonable. Therefore, Mother's third issue merits no relief.

In her fourth appellate issue, Mother claims the trial court erred when it factored in a child tax credit to determine Mother's income. In addition to the earning capacity, the court also included $2,000 in Mother's annual income, which it determined she received as a child tax credit. Mother argues the court never should have considered the tax credit; but even if it were to consider the credit, the court erroneously determined that the credit was $2,000 instead of $1,400. We address these arguments in turn.

To arrive at the monthly net income, the court may consider many types of income. Indeed, the definition of "income" is incredibly expansive, and includes income from any source, subject only to certain deductions. Pa.R.C.P. 1910.16-2(a) *cf.* Pa.R.C.P. 1910.16-2(c)(1). Courts may consider "other entitlements or lump sum awards" such as "income tax refunds." ***See***

- 13 -

Pa.R.C.P. 1910.16-2(a)(8)(ii). Moreover, the Rules specifically anticipate the effect of the Child Tax Credit and require courts to consider tax consequences when calculating support:

> In order to maximize the total income available to the parties and children, the trier-of-fact may award, as appropriate, the federal child tax credit to the non-custodial parent, or to either parent in cases of equally shared custody, and require the other party to execute the waiver required by the Internal Revenue Code, 26 U.S.C. § 152(e). The trier-of-fact **shall consider** the tax consequences associated with the federal child tax credit in calculating the party's monthly net income available for support.

Pa.R.C.P. 1910.16-2(f) (emphasis added).

Mother argues that the trial court did not have to consider the tax credit, and thus erred when it did so. As these Rules make clear, Mother is incorrect.

Mother next argues that the trial court use an inaccurate figure when it considered the child tax credit. Mother argues that based on her actual earnings, she was only entitled to a credit of $1,400 – not $2,000. While she may be correct, it appears that the trial court used the $2,000 figure, because that it what Mother would have received had she worked fulltime. In other words, the court's use of the child tax credit was an extension of its decision to impose a fulltime earning capacity. This was within the court's decision. Mother merits no relief on this point.[1]

---

[1] To the extent that the trial court should have used the $1,400 figure, the difference in the amount of support would have been *de minimis* – *i.e.*, negligible. While the difference in the amount of credit ($600) is substantial,
*(Footnote Continued Next Page)*

Mother presents a similar claim in her fifth appellate issue. Here, Mother argues the trial court's calculation of her monthly net income was erroneous because it mistakenly believed that Mother's local tax rate was 1.00% when it is 1.65%. The trial court opined that this issue should be waived, because Mother did not mention this discrepancy during the *de novo* hearing. **See** T.C.O. at 4; **see also** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). We agree Mother waived this issue. Mother's fifth issue merits no relief, either.[2]

In sum, we conclude that the trial court did not err or abuse its discretion when it adopted the conference officer's support recommendation. The trial court's *de novo* procedure was proper; its use of the February retroactivity date was supported by the record; and the court did not abuse its discretion when it assessed Mother's net income.

Order affirmed. Jurisdiction relinquished.

---

the amount added to Mother's monthly net income is only $50. Even if we used Mother's figures to recalculate the award under Rule 1910.16-3 ("Support Guidelines. Basic Child Support Schedule") and Rule 1010.16-4 ("Support Guidelines. Calculation of Support Obligation, Formula"), the difference in the amount of child support would be trivial.

[2] Even if we considered this issue, again we would find the difference in amount support to be *de minimis*.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/08/2024