J-A21042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JON CURTIS ASPRIL | : | |
| | : | |
| Appellant | : | No. 1833 MDA 2024 |

Appeal from the Judgment of Sentence Entered November 18, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004460-2023

BEFORE:  PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED: AUGUST 19, 2025**

Appellant Jon Curtis Aspril appeals from the judgment of sentence entered in the Court of Common Pleas of York County following his guilty plea to the charges of receiving stolen property and driving while operating privilege is suspended or revoked.[1]  After a careful review, we vacate the restitution sentence and remand for further proceedings with regard thereto. Upon remand, applying the dictates of 18 Pa.C.S.A. § 1106, the trial court shall determine whether the restitution should be increased, decreased, or remain the same. We affirm the judgment of sentence in all other respects.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3925(a) and 75 Pa.C.S.A. § 1543(b)(1)(i), respectively.

The relevant facts and procedural history are as follows: On October 2, 2023, the Commonwealth filed an Information charging Appellant with burglary, criminal trespass, receiving stolen property, and driving while operating privilege is suspended or revoked after the police stopped Appellant's van and seized stolen items belonging to the victim, Martin Livingston.

On July 30, 2024, Appellant, represented by counsel, entered a negotiated guilty plea to the charges of receiving stolen property, 18 Pa.C.S.A. § 3925(a), and driving while operating privilege is suspended or revoked, 75 Pa.C.S.A. § 1543(b)(1)(i). During the guilty plea hearing, Appellant admitted that, "on or about May 4, 2023, in York County, in the Commonwealth of Pennsylvania, [he] intentionally received, retained, or disposed of moveable property, namely, [a] cast iron tub[], [a] porcelain sink[], and rain spouting."[2] N.T., 7/30/24, at 6. In accordance with the parties' plea agreement, all remaining charges were dismissed. *Id.* at 9.

The Commonwealth noted that, for receiving stolen property, the negotiated sentence was "for two years of probation, restitution, and costs." *Id.* at 2. However, the Commonwealth indicated the parties did not agree on the amount of restitution. *Id.* The Commonwealth averred restitution should be set at "$5,124.41 owed to Martin Livingston." *Id.*

_____

[2] We note the record refers to "rain spouting" and "downspouts" interchangeably.

Appellant agreed that he owed restitution for the victim's items seized from his van, including "the cast iron tub[,] the porcelain sink[], and rain spouting belonging to Martin Livingston[.]" *Id.* at 8. However, since he was not pleading guilty to burglary, he disputed that he owed restitution for "remodeling expenses" and/or damage done to the buildings during the course of these items being removed. *Id.*

As to the driving offense, the Commonwealth noted the negotiated sentence was a $1,000.00 fine and costs. *Id.* at 3.

The trial court accepted Appellant's guilty plea and immediately sentenced him. Specifically, as to receiving stolen property, the trial court sentenced Appellant to two years of probation and directed Appellant to pay restitution to Mr. Livingston in the amount of $5,124.41. The trial court stated the restitution "is part of the sentence." *Id.* at 11.[3] As to driving while his operating privileges were suspended or revoked, the trial court sentenced Appellant to a $1,000.00 fine and costs, as well as directed him to complete a Written Plan to Avoid Driving.

Before the conclusion of the hearing, Appellant's counsel made an oral motion for reconsideration of the restitution amount, and the trial court

---

[3] Relevantly, in the accompanying July 30, 2024, written sentencing order, the trial court indicated that, as to receiving stolen property, Appellant was sentenced to two years of probation with the following condition imposed: "Pay Restitution in the amount of $5124.41 to Martin Livingston….Restitution to be paid first." Order, filed 7/30/24.

granted Appellant's motion. *Id.* at 9. However, the trial court noted: "Any payments made will be held in escrow pending the restitution hearing. So go ahead and make payments, they will hold them, and then it will either be applied to restitution or costs." *Id.* at 9. The trial court then scheduled a hearing for November 18, 2024, to address Appellant's reconsideration motion.

At the commencement of the hearing, Appellant's counsel argued the following:

> This is a receiving stolen property case. Restitution has to be limited—according to the case law—has to be limited to the items that he took….He was pulled over while he was driving a van that was filled with items that the police recovered[.] [I]f those items themselves were damaged, [Appellant] believes they could seek restitution. But, all of the [victim's] testimony is [going to be] about damage done to a house, not to items that were in a van. So, he pled guilty to receiving stolen property.

N.T., 11/18/24, at 9-10.

During the hearing, Mr. Livingston testified he owns 6.8 acres with a barn, house, and spring house in York County. *Id.* at 5. The property is vacant, and Mr. Livingston described the house as being "not in really good shape." *Id.*

Mr. Livingston, who lives in North Carolina, testified he visited the property on June 13, 2023, and he saw portions of downspouts, a grid, and light fixtures missing from the outside of the house. *Id.* at 14-15. He also noticed boards that were covering the front door of the house, as well as boards that were covering the windows of an outside spring house, were

- 4 -

missing. *Id.* Mr. Livingston indicated that he had all of this "repaired and replaced." *Id.* at 15. He noted that "all of these things---well, except for the window [board] coverings, were in [Appellant's] possession[.]" *Id.*

Mr. Livingston noted that a sink and bathtub had been removed from the house, and when the items were removed, a portion of the floor collapsed. *Id.* Mr. Livingston testified he did not have the floors repaired, and he was not asking the trial court to impose restitution related thereto. *Id.* Further, he indicated that: "We didn't have the sink [or bathtub] replaced, but we had the spouts, the grid, the light. We're charging for all that stuff." *Id.*

Mr. Livington clarified that he was not seeking restitution for the sink and bathtub since he was not replacing those items. *Id.* He indicated, "There's no floor to put it on." *Id.* However, he clarified he was seeking restitution for the replacement/repair of "the downspouts…the grid, the light---those are the items that we're charging for. And then, of course, boarding the place back up, which is expensive." *Id.* at 15-16. Mr. Livingston noted the house and spring house were "boarded up," and "some of the boards were damaged and some of them got replaced." *Id.* at 16.

Mr. Livingston testified he paid a contractor two separate installments of $2,500.00, for a total of $5,000.00. *Id.* Mr. Livingston indicated the checks were paid to the contractor "for the repairs of the home." *Id.* at 17-18. Mr. Livingston testified the police never returned the downspouts, sink, or bathtub to him. *Id.* at 25.

Mr. Livingston further testified that, in addition to the $5,000.00, he paid $96.27 for new "no trespassing" signs. *Id.* at 20. He also needed a drill bit and screws to place the signs, and he paid $28.14 for these items. *Id.* He indicated that he decided to purchase additional "no trespassing" signs to discourage future problems. *Id.* at 19.

On cross-examination by Appellant's counsel, Mr. Livingston reiterated that he paid a contractor a total of $5,000.00. Specifically, the following relevant exchange occurred between Appellant's counsel and Mr. Livingston:

> Q: Now, these [checks are] to a contractor, Bryan Hall. What kind of work was he doing on your property?
>
> A: He was replacing the downspouts, boarding up the places that had been entered through, and replacing the grids and the [items] I stated before.
>
> Q: Okay. So…these two checks, they are for both labor and materials, correct?
>
> A: Yes.
>
> Q: And some of those material include downspouts, correct?
>
> A: Yes.
>
> Q: You put in new downspouts to that property, correct?
>
> A: Yes.
>
> Q: You put in a new sink to that property, correct?
>
> A: No. We didn't replace the sink or the tub.
>
> ***
>
> Q: What is fascia board? F-A-S-C-I-A.
>
> A: Okay. It goes on the front of the house, any part of the house that's exposed right under the eave.
>
> Q: And part of this $5,000 repair included a hole in the foundation [of the house]; is that correct?
>
> A: Yes.

*Id.* at 25-26. Mr. Livingston noted the hole was created during a burglary when the grid was removed. *Id.* at 26.

On redirect examination, Mr. Livingston indicated that the $5,000.00, which he paid to the contractor, included repairs made to the house and spring house from damage that occurred "during the burglary." *Id.* at 27.

Cynthia Livingston testified she is Mr. Livingston's wife, and she confirmed she wrote the checks to pay the contractor $5,000.00. *Id.* at 29. She noted this was for "some damage done to [the] property last year[.]" *Id.*

Police Officer Jeremy Thomas Young testified he was the responding police officer, and he saw stolen items in the back of Appellant's van.[4] *Id.* at 33. Specifically, he saw "rain spouting…a porcelain sink, various tools, like drills and whatnot [*sic*]." *Id.* at 34. He noted these items "appeared to be old." *Id.* at 35. When he examined the property, it appeared that the rain spouting in the van matched that on the house. *Id.*

Officer Young confirmed that there was damage to boards covering windows of the spring house, as well as damage to the boards covering the front door of the house. *Id.* at 33. He indicated it was "hard to tell what was damage due to…somebody or nature or the environment." *Id.* at 34.

---

[4] Officer Young testified a fellow officer drove by the subject property and reported that a vehicle was parked thereon, so Officer Young responded to investigate. *Id.* at 35. As he approached the property, he saw Appellant's van leaving the scene, and he stopped the van. *Id.* He saw various items in plain view, and when he looked at the house, he noticed the items in the van appeared to have been taken from the house. *Id.*

However, he noted the boards covering the front door "had been removed from the actual door frame[.]" ***Id.***

On cross-examination, Officer Young admitted that he first observed Appellant as he was pulling away in his van, and, thus, he did not observe Appellant inside of the house or removing the items from the outside of the house. ***Id.*** at 36. He admitted that he did not observe Appellant damaging the house. ***Id.*** at 37.

At the conclusion of the hearing, the trial court confirmed restitution was warranted under 18 Pa.C.S.A. § 1106, but it was granting Appellant's request for a modification of the amount. ***Id.*** at 45. Specifically, the trial court indicated it was modifying the amount of restitution to $5,000.00. ***Id. See*** Order, filed 11/18/24. In support thereof, the trial court stated the following:

> In looking at this case, we did ask a question about the causal connect here. [H]is van was seen [on] the property and leaving the property in question. It was pulled over just outside the property. While he may have pled to receiving stolen property, there is definitely a causal connection of him picking up the property.
>
> Clearly, if downspouts are removed or if they have been washed away or in the possession [*sic*], they have to be replaced in order to prevent further damage to the property. The replacement cost is a cost that would be directly related to them having been removed in the first place, whether they were picked up off the ground or otherwise because they were not available to be placed back on the house in order to prevent further damage.
>
> The property was directly tied to this property, therefore, we do see a causal connection. We actually think [Appellant] is getting off lightly because we do not have the value for the bathtub and the sink, which I think this was a cast iron tub, which I'm not going to speculate because I'm not allowed to speculate,

but if that were added to the restitution, it could probably make it significantly higher.

Certainly, to repair the spouting and the outside issues by ripping off the grids and boards and other things, $5,000 is not an unreasonable amount that would be a direct result of removing this property….$5,000 probably will not fully reimburse the victim for the damage caused, nonetheless, that is the amount. We are not going to charge him for the new trespassing signs. Obviously, we know that they would want to do that but certainly the $5,000 of repairs, which does not include the floor and is mostly the spouting and securing the outside of the property to prevent further damage caused by the removal of the items, is a direct result of the crime. So, we will order the restitution in the amount of $5,000.

N.T., 11/18/24, at 43-44.

The sentence remained the same in all other respects. Appellant filed a timely counseled notice of appeal, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following in his "Statement of Questions Involved" (verbatim):

The trial court issued an illegal sentence when it sentenced Appellant under 18 Pa.C.S.A. § 1106 when Appellant's sentence was a probation sentence and appropriately fell under 42 Pa.C.S.A. § 9754.

Appellant's Brief at 4.

Appellant contends that his sentence is illegal because the trial court had no authority to impose restitution pursuant to 18 Pa.C.S.A. § 1106; but rather, restitution should have been considered under the dictates of 42

Pa.C.S.A. §§ 9754 and 9763(b)(10).[5] Specifically, Appellant contends that, since he was sentenced to a period of probation, as opposed to a period of incarceration for receiving stolen property, restitution could not have been imposed under Section 1106 of the Crimes Code. He suggests that the trial court illegally imposed restitution as part of his direct sentence when it was required to do so only as a condition of his probation under the Sentencing Code.

Appellant notes that, since the trial court used an improper stringent statutory scheme under Section 1106 of the Crimes Code, the trial court erred in failing to consider that restitution was "discretionary as opposed to mandatory" and failing to consider Appellant's "ability to pay" restitution as required under 42 Pa.C.S.A. § 9763(b)(10). Appellant's Brief at 14.

Finally, Appellant avers that, to the extent Section 1106 is applicable, restitution was imposed for items without a direct causal connection to the crime for which he was convicted.

_____

[5] We note that 42 Pa.C.S.A. § 9754 provides, in relevant part, "[t]he court shall attach reasonable conditions authorized by section 9763 (relating to conditions of probation)." 42 Pa.C.S.A. § 9754(b). Further, 42 Pa.C.S.A. § 9763 provides, in relevant part, that a condition of probation may include a direction "[t]o make restitution of the fruits of the crime or to make reparations, in an affordable amount and on a schedule that the defendant can afford to pay, for the loss or damage caused by the crime." 42 Pa.C.S.A. § 9763(b)(10). Thus, Subsections 9754(b) and 9763(b)(10) govern the imposition of restitution imposed as a condition of probation under the Sentencing Code as opposed to a direct sentence effective during a probation sentence under the Crimes Code.

Initially, we address Appellant's claim the trial court had no authority to impose restitution under Section 1106 of the Crimes Code and, instead, restitution should have been considered under the dictates of Sections 9754 and 9763(b)(10) of the Sentencing Code.

> In the context of criminal proceedings, an order of restitution is not simply an award of damages, but, rather, a sentence. An appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. The determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary.

**Commonwealth v. Stradley**, 50 A.3d 769, 772 (Pa.Super. 2012) (citations and quotation marks omitted).[6] **See Commonwealth v. Cochran**, 664 Pa. 438, 244 A.3d 413, 420 (2021) ("[Q]uestions implicating the trial court's power to impose restitution concern the legality of the sentence.").

We have observed:

> Restitution is a creature of statute and, without express legislative direction, a court is powerless to direct a defendant to make restitution as part of a sentence. There are two statutory bases for a restitution order: restitution may be imposed as part of a direct sentence under the Crimes Code, **see** 18 Pa.C.S.[A.] § 1106, or as a condition of probation under the Sentencing Code, **see** 42 Pa.C.S.[A.] §§ 9754, 9763(b)(10). **See also Commonwealth v. Hall**, 622 Pa. 396, 80 A.3d 1204, 1215 (2013).

_____

[6] We recognize that Appellant entered a guilty plea in this case. However, Appellant is permitted to challenge the legality of his sentence following the entry of a guilty plea. **See Stradley**, **supra**.

*Clark v. Peugh*, 257 A.3d 1260, 1268 (Pa.Super. 2021) (quotation marks and quotations omitted).

Restitution, imposed as a direct sentence, is set forth at Section 1106 of the Crimes Code, which relevantly provides the following:

> **§ 1106. Restitution for injuries to person or property**
>
> **(a) General rule.--**Upon conviction for any crime wherein:
>
> (1) property of a victim has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime; or
>
> (2) the victim, if an individual, suffered personal injury directly resulting from the crime,
>
> the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.
>
> **(b) Condition of probation or parole.--**Whenever restitution has been ordered pursuant to subsection (a) and the offender has been placed on probation or parole, the offender's compliance with such order may be made a condition of such probation or parole.
>
> **(c) Mandatory restitution.--**
>
> (1) The court shall order full restitution:
>
> (i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss.

18 Pa.C.S.A. § 1106(a)(1), (2), (b), and (c)(1)(i) (bold in original).

Here, there is no dispute that the trial court imposed restitution as a direct sentence. Not only did the trial court specifically refer to Section 1106 in imposing restitution, but it noted that the true intent behind its restitution sentence was penal in nature, and not rehabilitative, as it was intended to compensate the victim for his losses, which were a direct result of the crime. The language of Subsection 1106(a) clearly provides that the offender "shall

be sentenced to make restitution in addition to the punishment prescribed therefor." 18 Pa.C.S.A. § 1106(a).[7]  Thus, under Subsection 1106(a), in addition to the punishment prescribed (here probation), the trial court had the authority to impose restitution for the "property of [the] victim [that] has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of [Appellant's] crime[.]" 18 Pa.C.S.A. § 1106(a).

Moreover, as the restitution statute specifically and plainly provides, a defendant's compliance with an order of restitution as a direct sentence under Section 1106 may be made a condition of his or her probation.  *See* 18 Pa.C.S.A. § 1106(b).  That was the case here.  Simply put, contrary to Appellant's suggestion, the trial court had the statutory authority to impose restitution as a component of Appellant's direct sentence under Section 1106 of the Crimes Code and not as a condition of his probation under Sections 9754 and 9763 of the Sentencing Code.  The order of restitution attached to and was made effective during his direct sentence of probation under Subsections 1106(a) and (b).  ***See Commonwealth v. Vouvounas***, 518 EDA

---

[7] We are mindful that "[o]ur standard of review of a lower court's interpretation of a statute is *de novo*, and our scope of review is plenary." ***Commonwealth v. Montgomery***, 660 Pa. 439, 234 A.3d 523, 533 (2020). When engaging in statutory interpretation, "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature." 1 Pa.C.S.A. § 1921(a). "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." ***Commonwealth v. McCabe***, ____ Pa. ____, 265 A.3d 1279, 1287 (2021) (citation omitted).

2024, 2025 WL 2049273, at *7 (Pa.Super. July 22, 2025) (unpublished memorandum)[8] ("When restitution is ordered under Section 1106(a) and an offender has been placed on probation or parole, restitution…may be ordered as a condition of such probation or parole. This restitution, however, is still a condition of an offender's sentence as opposed to a condition of probation under Section 9754[ ].") (quoting **Commonwealth v. Holmes**, 155 A.3d 69, 87 n.11 (Pa.Super. 2017) (*en banc*) (*per curiam*) (explaining the statutory scheme of Section 1106)).

Additionally, having concluded the trial court had statutory authority to order restitution under Section 1106 of the Crimes Code, we note that the statute plainly provides "the offender **shall** be sentenced to make restitution….**regardless** of the current financial resources of the defendant." 18 Pa.C.S.A. § 1106(a), (c)(1)(i) (bold added). Accordingly, we find no merit to Appellant's claim the trial court erred in failing to consider that restitution was "discretionary as opposed to mandatory" and failing to consider Appellant's "ability to pay" restitution under the applicable statutory scheme.[9] **See Commonwealth v. Weir**, 662 Pa. 402, 239 A.3d 25, 27 (2020)

---

[8] **See** Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

[9] In any event, we note that, during the November 18, 2024, hearing, the trial court inquired into Appellant's ability to pay restitution. **See** N.T., 11/18/24, at 41-42 (trial court asking Appellant about his job, his hours, and his wages).

(discussing the mandatory directives of Section 1106); **Commonwealth v. Thomas**, ___ A.3d ___, 2025 WL 1790221 (Pa.Super. June 30, 2025) (where restitution is ordered pursuant to 18 Pa.C.S.A. § 1106 the trial court need not consider the defendant's ability to pay).

Finally, we address Appellant's claim that the order of restitution was illegal because it was imposed for items without a direct causal connection to the crime as required under Subsection 1106(a). In this vein, Appellant admits that, while he owes restitution for the victim's stolen items that he received, it is illegal to order him to pay restitution for damage done to the buildings during the course of these items being removed.  Appellant's Brief at 14.

Specifically, he notes there is a lack of a sufficient nexus between his conviction for receiving stolen property and the damage to the house, including the removal of boards covering the front door of the house, the removal of boards covering the windows of the spring house, and the hole in the foundation of the house.  **Id.**  He contends that, since he pled guilty to solely receiving stolen property,[10] and not to the crime of burglary, it is illegal to impose "restitution for total loss sustained in the burglary where there was no evidence of a direct causal connection between total losses sustained and [Appellant's] role in receiving some of the property that was stolen." **Id.**

_____

[10] We recognize Appellant also pled guilty to driving while operating privilege is suspended or revoked; however, this offense is irrelevant to our analysis since the restitution was imposed as part of Appellant's sentence for receiving stolen property.

As we held *supra*, Section 1106 of the Crimes Code governs the restitution in this case. Our Supreme Court has held that "[Subsection] 1106(a) is mandatory in its directive and removes any discretion from the sentencing court to impose restitution as punishment upon conviction of a crime under two circumstances[,]" one of which being "where the property of a victim has been stolen, converted or otherwise unlawfully obtained or its value has been substantially decreased as a direct consequence of the crime[.]" **Weir**, **supra**, 239 A.3d at 37.

A challenge to a court's restitution order can either implicate the legality of a sentence or the discretionary aspects of a sentence. To determine the nature of such claim, our High Court has explained that "a challenge to the sentencing court's authority to order restitution raises a non-waivable legality of sentencing issue. A challenge to the manner in which the sentencing court exercises that authority in fashioning the restitution implicates the discretionary aspects of the sentence." *Id.*

Therefore, an appellant challenges the legality of a restitution order where he argues that the statutory circumstances of Subsection 1106(a)(1) have not been established, including that restitution was imposed with no causal connection between the restitution and the crime for which he was convicted. *Id.* at 37-38. Contrarily, an appellant's "discontent with the amount of restitution and the evidence supporting it is a challenge to the

sentencing court's exercise of discretion, not to the legality of sentence." ***Id.*** at 38.

Appellant's argument in the case *sub judice* implicates the legality of his sentence, as he contends the trial court lacked the authority to order restitution for the replacement of the boards for the house's front door, the replacement of the boards for the spring house's windows, and the repair of the hole in the house's foundation. **See** Appellant's Brief at 15. That is, he avers that, even assuming the boards and foundation were damaged during a burglary, as opposed to during bad weather or due to lack of care to the vacant property, there is no sufficient nexus between his conviction for receiving stolen property and the damage from a burglary.

Under Section 1106 of the Crimes Code, "restitution may be imposed only for those crimes to property or person where the victim suffered a loss that flows from the conduct that forms the basis of the crime for which the defendant is held criminally accountable." ***Commonwealth v. Pappa***, 845 A.2d 829, 842 (Pa.Super. 2004). Injury to property, for purposes of restitution as part of a direct sentence, is defined as "[l]oss of real or personal property,…or decrease in its value, directly resulting from the crime." 18 Pa.C.S.A. § 1106(h) (definitions).

> [Therefore,] restitution is proper only if there is a direct causal connection between the crime and the loss. The sentencing court applies a "but for" test in imposing restitution; damages which occur as a direct result of the crimes are those which would not have occurred but for the defendant's criminal conduct.

*Commonwealth v. Poplawski*, 158 A.3d 671, 674 (Pa.Super. 2017) (citations omitted). *See Commonwealth v. Zrncic*, 167 A.3d 149, 152 (Pa.Super. 2017) ("[A]ny restitution ordered must flow from only those crimes for which a defendant is convicted, and not any underlying, unproven, conduct."). "The amount of restitution ordered by the court cannot be in excess of the damage caused by the defendant." *Commonwealth v. Weir*, 201 A.3d 163, 171 (Pa.Super. 2018) (citations omitted).

In the case *sub judice*, Appellant pled guilty to receiving stolen property, and the remaining charges, including burglary and criminal trespass, were dismissed. A person commits the offense of receiving stolen property if he "intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed of with intent to restore the owner." 18 Pa.C.S.A. § 3925(a). Relevantly, in a case of theft by receiving stolen property, a reviewing court will not uphold a sentence provision which requires restitution for property which the Commonwealth has not proven was either stolen or received by the defendant. *See Commonwealth v. Reed*, 543 A.2d 587 (Pa.Super. 1988) (holding a defendant convicted of unlawfully receiving property taken in a burglary could not be ordered *as part of his sentence* under 18 Pa.C.S.A. § 1106(a) to make restitution for total loss sustained in the burglary; but rather, restitution was proper only as to the property received by the defendant).

Here, the trial court directed Appellant to pay restitution in the amount of $5,000.00 based on the payments the Livingstons made to a contractor. However, as Mr. Livingston indicated, the payments included not only replacing stolen items found in Appellant's possession, such as the downspouts, but also repairs made to the house and spring house for damage resulting from an alleged burglary for which Appellant was not found criminally accountable or responsible. As Mr. Livingston testified, and the trial court accepted, the $5,000.00 restitution included "boarding the place back up, which is expensive." N.T., 11/18/24, at 15-16. Further, the $5,000.00 restitution sentence included fixing a hole in the house's foundation. *Id.* at 26. The trial court specifically indicated that the restitution order included materials and labor for the removal of the grids and boards during a burglary. *Id.* at 44.

However, Appellant was not convicted of burglary, and there is no evidence he was in possession of the boards, at least for the windows. Thus, any award for this damage to the house was based on mere speculation and was not directly linked to the crime to which Appellant pled guilty. *See Reed*, *supra*. *See also Commonwealth v. Harner*, 533 Pa. 14, 617 A.2d 702, 705-06 (1992) (where restitution was imposed as a condition of probation sentence under 18 Pa.C.S.A. § 1106(a) and (b) such restitution was permitted "only as to losses for which the defendant has been held criminally accountable"); *Commonwealth v. Warunek*, 279 A.3d 52 (Pa.Super. 2022)

(noting that restitution under Section 1106 is illegal if the criminal conduct for which the defendant was convicted is not what caused the loss).

Additionally, we note that, while the trial court imposed restitution for the stolen downspouts found in Appellant's possession, there is no indication the trial court imposed restitution for the sink and bathtub, for which Appellant was held criminally accountable in his guilty plea. N.T., 7/30/24, at 8. Mr. Livingston specifically testified that, despite the fact the sink and bathtub were never returned to him, his payments to the contractor did not include any value related to the sink or bathtub. N.T., 11/18/24, at 27. The trial court specifically indicated that its restitution order did not include these items, despite the fact the items were directly related to Appellant's conviction for receiving stolen property. *See id.* at 43-44.

For all of the foregoing reasons, we vacate the restitution order and remand the matter for a new sentencing hearing limited to the issue of the proper amount of restitution to be ordered.[11] We affirm the judgment of sentence in all other respects.

---

[11] We also remind the trial court that, pursuant to 18 Pa.C.S.A. § 1106(c)(2), "[a]t the time of sentencing the court shall specify the amount and method of restitution." 18 Pa.C.S.A. § 1106(c)(2). As to the method, the trial court may set the method as "a lump sum, by monthly installments or according to such other schedule as it deems just." 18 Pa.C.S.A. § 1106(c)(2)(ii). Here, while the trial court indicated restitution would take priority over costs, and any payments made before the November 18, 2024, hearing would be held in escrow, the trial court did not give further direction as to the "method."

Judgment of sentence affirmed in part and vacated in part. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/19/2025